† GREAT POND MINING & AGR'L. CO. *versus* BUZZELL.

Where certain personal property was leased to the defendant, and persons were agreed upon to appraise a *portion of it*, their appraisal in writing of the whole property, without other proof, is not legal evidence in an action against him, although it is stipulated that the whole shall be *appraised.*

Of the acts and omissions of the lessor that will excuse a breach of the covenants of the lessee.

The construction of the language of a written contract is within the province of the Court, and when the determination is left to the jury, exceptions lie, unless it clearly appears they have construed it correctly.

A levy upon property leased for the debts of the lessor, without any fault on the part of the lessee, or any agreement on his part to pay them, will excuse the latter from performance of his covenants to manage such property, after it is so taken.

ON EXCEPTIONS from *Nisi Prius,* HOWARD, J., presiding.

COVENANT BROKEN. The pleadings were the general issue, and a special plea by leave of Court in excuse and avoidance.

The instrument on which the suit was founded was a lease, dated in June, 1852, to the defendant, of the real and personal property of plaintiffs', at Cape Elizabeth, for three years, on the condition that he should perform all his covenants in the lease.

The covenants of the lessee were, that he should immediately commence operations on the company's works in digging, preparing and forwarding to market and selling the peat, on the lands of the company, for the purposes of a deodoriser and fertiliser and also for fuel; that he would make such advances of money as might be necessary to keep said works in efficient operation, up to the full extent of the capacity of such works as were then on hand, and such greater extent as in his judgment would be mutually advantageous to himself and the company; that he would keep an accurate account of sales and expenses open to the directors; and that he would pay over to the treasurer one-half part of all the nett profits of the sales and operations, which should be estimated as follows:—

First, an inventory shall be taken of all the peat now on hand, whether manufactured as deodoriser or partly manufactured, to be appraised by a committee of the board of directors, the basis of said appraisal to be *pro rata* what it shall cost the said Buzzell to produce the same amount, and the said Buzzell to account upon the sale of the same, as well as for one-half of the nett profits made on the sale over and above its present value.

Second, an inventory shall be taken of all the other personal property now in possession of the company and an appraisal of its value, and the said Buzzell to return the same at the end of the lease in like good order and condition, excepting reasonable use, or to account for the value thereof.

Third, after reimbursing himself for expenses, to pay over monthly one-half the nett profits over the cost of manufacture, transportation and sales.

The plaintiffs introduced their records, showing the appointment of one Buzzell and Rich, as a committee to take the inventory and appraise the property.

They then offered an inventory and appraisal made by that committee of all the personal property, both peat and other property, amounting to over $2400. This was objected to by defendant, but was admitted.

The plaintiffs also offered evidence showing, that the company were largely indebted prior to the making of the lease, and that defendant knew it, and that defendant had sold the peat on hand and had made no return of his proceedings in any manner to the company, and had not restored to them the personal property or paid them any money.

It was in evidence, that the defendant did nothing to the premises in 1853, but rented a part of the upland for $25, and came back in the fall and gathered the cranberries.

Defendant showed by the records of the county, that all of plaintiffs' real estate was under attachment prior to the execution of the lease, and that a large portion of it with the buildings were set off on execution, Dec. 9, 1852, and the remainder on other executions, June 8, 1853.

The presiding Judge in his charge, among other things, referred to the following clause in the lease, viz. that he, defendant, will immediately commence the operations at the works of said company and make such advances of money as may be necessary to keep said works in effective operation up to the full extent of the capacity of such works as now are on hand, and to such further and greater extent as may be in his judgment mutually advantageous to himself and the said company, and in connection with this clause the Judge said, that if the defendant knew the plaintiffs were owing debts at the time of making the lease, and if he agreed at the same time to pay these debts, and if by reason of his neglect to pay them the suits for their recovery matured to judgment, and executions were levied upon the property of the plaintiffs, that this would afford no such occasion for complaint as to excuse or justify a breach of his

covenants.   That the subsequent breaches of covenants or agreement of the plaintiffs, would not excuse prior breaches of the defendant's covenant, but that the defendant was not answerable for breaches caused by the plaintiffs' neglect.

The jury returned a verdict for plaintiffs for $3000, and the defendant excepted to the rulings and instructions.

*H. P. & L. Deane,* for defendant.

*Sweat,* for plaintiffs.

TENNEY, J. — Certain covenants of the defendant, contained in an indenture between the parties, dated June 30, 1852, are alleged in the writ to have been broken.   By the indenture a large tract of land in the town of Cape Elizabeth was leased by the plaintiffs to the defendant for the term of three years.   This land was cultivated to some small extent as a farm; but a considerable portion of it was composed of peat; and it appears to have been the original design of the company to make use of the peat for fuel, and by certain processes to convert other parts of it into an article called *deodorizin,* to be used as a fertiliser of the soil.   At the time of the execution of the indenture, the company had carried on its works to a considerable extent, and had on hand quantities of peat, suitable for fuel, and quantities of the same in its various stages of manufacture, as deodorizin.   This the defendant was to take and dispose of according to the terms of the indenture.   Various articles of machinery owned by the company, and used in their operations, and tools and other property of different descriptions were also leased to the defendant in the same indenture; and he was to carry on the operations promotive of the general object, which the company had in view when they obtained their charter.

Among other things to be done, in carrying out the purposes of the contracting parties, was the following in the indenture. — "First an inventory shall be taken of all the peat now on hand, at the works of said company, whether manufactured as *deodorizin,* or partly manufactured, or what

is merely dried and stored, or in whatever form the same may now be in. Such property to be appraised by a committee of the board of directors," &c. "Second, an inventory shall be taken of all the other personal property, now in the possession of the company, and an appraisal of its value, and the said Buzzell hereby covenants to return the same to the company at the end of this lease in like good order and condition as the same now is," &c., "or account to the company for the value thereof." It is for the alleged breach of the covenants just quoted, that the plaintiffs prosecute this suit.

A committee of the directors, duly chosen, as appears by the records, made an appraisal of the peat, in its various conditions as mentioned in the indenture, and also of all the other personal property leased by the plaintiffs to the defendants. A schedule of all these articles, with their appraised value upon the same paper, and signed by the committee, was introduced in evidence against the objection of the defendant, without further proof, as evidence, that the defendant had the articles, and also of their value. So far as this committee took the inventory of the peat, and its value, it was in pursuance of the contract in the indenture, and was unobjectionable; but it was not agreed by the parties, that the inventory of the other articles of personal property should be taken by a committee of the directors; and when the whole of the contract upon this subject is examined, we think that such a construction is inadmissible, and this part of the inventory was not competent evidence without some other proof.

In another part of the indenture, the defendant covenants, that he will immediately commence the operations at the works of said company, and make such advances of money, as may be necessary, to keep said works in efficient operation, up to the full extent of the capacity of such works as are now on hand, and to such further and greater extent, as may be in his judgment, mutually advantageous to himself and the company.

Evidence was introduced by the plaintiffs, that prior to the making of the lease, the company was largely indebted, and the matter of indebtedness was talked over before the defendant. And it was shown by records, introduced by the defendant, that all the real estate of the company was attached prior to the execution of the lease, and that a large portion of it, with the buildings thereon, was set off on an execution, Dec. 9, 1852, and the residue was set off on other executions, June 8, 1853.

The Judge in his charge to the jury referred to the part of the lease, in which the defendant agreed to make advances of money, &c., and in connection therewith said, if the defendant knew the plaintiffs were owing debts, at the time of making the lease, and if he agreed at the same time to pay these debts, and if, by reason of his neglect to pay them, the suits for their recovery matured to judgment, and executions were levied upon the property of the plaintiffs, that this would afford no such occasion for complaint, as to excuse or justify a breach of his covenants. That the subsequent breaches of covenants or agreements of the plaintiffs would not excuse prior breaches of the defendant's covenants, but that the defendant was not answerable for breaches caused by the plaintiffs' neglect.

If the Judge referred to an agreement, independent of the indenture, that the defendant was to pay debts of the company that he knew they were owing, which we presume he did not, the case furnishes no evidence that he did so agree, and there was no basis for the instruction. But if it was designed to refer to the written contract, as we doubt not it was, from the reference to the portion of the indenture, where the defendant contracted to make such advances, &c., the question was presented to the jury, whether he knew of the indebtedness of the company, and if so, whether he agreed to pay the outstanding debts or not.

It cannot be doubted that the Judge erred in submitting the last question to the jury. It was the province of the Court to give a construction to the language of the inden-

ture, and inform the jury of its true import. This instrument contains nothing which shows that the property of the company was attached on pending suits, or that the company was indebted. And when the defendant covenanted to make such advances of money as might be necessary, to keep said works in efficient operation, up to the full extent of the capacity of such works, &c., by a proper construction, these advances were to be limited to such as the works themselves in their ordinary operations, as under the contract they were to be used, would require, independent of advances, necessary to satisfy claims of creditors upon them, which if unpaid might be the cause of suspending the business undertaken by the defendant. This part of the indenture cannot reasonably be construed to mean, that the money to be advanced, should be the sum necessary to pay the debts of the company to an unknown amount, which were secured by attachments upon the real estate leased to the defendant, in addition to that required to carry out efficiently the objects of the plaintiffs under their charter.

Had the Judge given this construction to the indenture, there would have been no ground for the instruction, that if by reason of the defendant's neglect to pay these debts, the suits for their recovery matured to judgment and executions were levied upon the property of the plaintiffs, that this would not excuse or justify a breach of his covenants.

If the jury had found, that the defendant did not agree to pay the debts of the company, and this had clearly appeared in the case, it was the true construction, and the defendant is not injured by the submission of this question to the jury. But this does not appear from the case, but from the amount of the verdict, it is rather to be presumed that the jury found that he did so agree. And if the jury further found, that by neglecting to fulfil this agreement, judgments were obtained against the plaintiffs and all their real estate taken to satisfy them before the lapse of a year from the time of the execution of the indenture, they were

to hold the defendant responsible without any excuse for a breach of his obligations.

The defendant not having agreed to pay these debts of the company, but the real estate having been taken wholly by its own fault, he was early deprived of the benefit of his lease, for the works could not be carried on after the land, which was the basis of the whole contract and undertaking, passed into the hands of the company's creditors. By remaining there after the levies, he was a trespasser upon those creditors. The extent upon the land being made in consequence of indebtedness of the company, before the lease, and without his agency, and not having agreed to pay those debts or any part thereof, he was excused for an omission to perform his covenants to carry on the works afterwards, so far as the omission was the consequence of the land passing from his control.

*Exceptions sustained, verdict set aside,*

*and new trial granted.*